Theodore E. Essenfeld
Reg. No. 08418-506
Federal Corrections Institution
P.O. Box 9000
Safford, AZ      85548



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

Theodore E. Essenfeld,
    Petitioner,

v.

Ubknown Dulgov,
    Respondent.

CASE No.
CV-25-00294-TUC-JGZ (JR)

Pending a judgment in this case I, Theodore E. Essenfeld, petitioner, respectfully request the court consider the following facts when making its decision.

Despite the fact that my Unit Team at FCI-Safford, whose responsibility it is to assess what conditions and duration of pre-release custody are "adequate and appropriate," I remain in custody at FCI-Safford. The Unit Team determined that transfer to prerelease custody on September 23, 2025 would meet my "release needs." That date has passed. My Conditional Transition To Community Date / SCA Conditional Placement Date which was determined to be October 26, 2025 is today, yet I remain at FCI-Safford. This is further evidence that Respondent has failed to exercise his statutory and discretionary authority to transfer me to prerelease custody in accordance with relevant statutes. Such conduct is arbitrary and caprecious, denying me my rights under the laws enacted by Congress and BOP's

own rules and regulations.

I also ask the court to consider the argument made by counsel in respondent's Return & Answer relating to Title 42 U.S.C. §17501. As I mentioned in my reply, §17501 was transferred to Title 34 U.S.C. §60501 (Exhibit 1). §17501 is not valid law. §60501 makes no mention of the duration, maximum or minimum, of "transitional services" or prerelease custody. However, Title 34 U.S.C. §60541(a)(2)(A) states, unambiguously, "Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include - THE MAXIMUM ALLOWABLE PERIOD IN A COMMUNITY CONFINEMENT FACILITY..." (emphasis added). This is completely contrary to respondent's incorrect assertion that prerelease custody be minimized.

It is disappointing that BOP officials and U.S. Attorneys are unfamiliar with current, relevant laws and seem intent on violating them at every opportunity. That those who are responsible to uphold the law and punish those who violate it are themselves systematically violating the statutes enacted by Congress and denying me my rights is the height of irony. I implore the court, again, to send a message that such violations and abuses will not be tolerated. Please correct this injustice and hold accountable those individuals within the BOP and the DOJ who are depriving me - and countless other inmates - of our rights.

I certify that I placed a copy of this document in the mailroom at FCI-Safford on October 26, 2025 for delivery to:

> Tanya Miller, Assistant U.S. Attorney
> 405 West Congress Street, Suite 4800
> Tucson, AZ 85701-5040

I declare under penalty of perjury that the above is true and correct. Respectfully submitted this 26th day of October, 2025.

42 USC.
# § 17501. [Transferred]

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

This section, stating purpose and containing findings, was transferred to 34 USCS § 60501 by the compilers of the United States Code.

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT 1  PG 1 of 2

*34 USC*

## § 60541. Federal prisoner reentry initiative

**(a) In general.** The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:

(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons—

**(A)** assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;

**(B)** generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;

**(C)** determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);

**(D)** ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;

**(E)** coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into communities;

**(F)** collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and

**(G)** provide incentives for prisoner participation in skills development programs.

(2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include—

**(A)** the maximum allowable period in a community confinement facility; and

**(B)** such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

USCS                                                                 1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*EXHIBIT 1 pg 2 of 2*