IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Theodore E Essenfeld,<br><br>　　　　Petitioner,<br><br>v.<br><br>Unknown Dulgov,<br><br>　　　　Respondent. | No. CV-25-00294-TUC-JGZ (JR)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Petitioner Theodore E. Essenfeld's ("Petitioner") Amended Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in Federal Custody ("Petition"). (Doc. 3.) Pursuant to Local Rule 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to United States Magistrate Judge Jacqueline Rateau for Report and Recommendation. (Doc. 7.) Respondent filed his Return and Answer to Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Answer"). (Doc. 24.) Petitioner filed his reply. (Doc. 26.)

As more fully set forth below, the undersigned recommends that the district court, after an independent review of the record, dismiss the Petition.

### BACKGROUND[1]

Petitioner is serving a 37-month term of imprisonment for cyberstalking and identity theft in violation of federal law. (Doc. 24-1, ¶ 19.) Respondent represents that Petitioner's

---

[1] Unless otherwise indicated, all factual references are taken from the exhibits attached to Respondent's answer.

release date from the custody of the Bureau of Prisons ("Bureau" or "BOP") via good time conduct only is December 20, 2026. (*Id*., ¶ 24.) Respondent represents that Petitioner's projected full release date from Bureau custody applying his previously "earned time credits" (ETCs) applied under the First Step Act (FSA) is October 31, 2026. (*Id*., ¶¶ 23, 24.) Respondent further represents that because Petitioner may continue to accumulate FSA ETCs during the remainder of his incarceration, including during prerelease custody, the Bureau calculated a "conditional release" date for Petitioner on July 23, 2026. (*Id*., ¶ 23.)

Prior to arriving at FCI-Safford, Petitioner alleges that he undertook qualified programming which should count towards his FSA time credits. (Doc. 1 at 7.) Petitioner claims that due to such completed programming he is entitled to an additional 95 days of FSA ETCs which BOP must add to his record. (*See id*.) Petitioner further alleges that BOP staff failed to evaluate his eligibility for FSA time credits within the 28 days of arrival at FCI-Safford required. (Doc. 3 at 4.) Petitioner alleges that if BOP applies his FSA ETCs, his conditional release date would be in April of 2026. (Doc. 1 at 15.)

Respondent sets out that Petitioner's eligibility for FSA credit was reviewed on May 8, 2025. (Doc. 24-1, ¶ 20.) At that time, Petitioner was determined eligible to earn FSA time credit. (*Id*.) Respondent represents that Petitioner, having a low recidivism risk, is eligible to have his earned time credit applied toward prerelease custody or his supervised release term. (*Id*., ¶ 20.) Respondent represents that as of September 7, 2025, Petitioner had earned 50 days of FSA time credit. (*Id*., ¶¶ 23, 24, 30.)

**PETITION, ANSWER, AND SUMMARY OF RECOMMENDATION**

**The Petition**

Petitioner raises two grounds for relief in his Petition. In Ground One, Petitioner alleges that despite his low/minimum recidivism risk, staff at FCI-Safford and the BOP failed to calculate and apply Petitioner's FSA ETCs and correct his release date. (Doc. 1 at 7-8; Doc. 3 at 4.) Petitioner asserts he has been in federal custody since May 2024, was sentenced on October 25, 2024, and arrived at FCI-Safford in April 2025, where he is

actively participating in Evidence Based Recidivism Reduction programs (EBRR), Productive Activities (PAs), and institutional work programs. (Doc. 1 at 7.) He asserts BOP policy requires FTCs be calculated within 28 days of an inmate's arrival, and he has yet to receive the credits or updated release date. (*Id*. at 10) Based on Petitioner's calculations, he claims he should have been transferred to a residential re-entry center or home confinement in April 2025 and have a conditional release date in April 2026. (*Id*. at 5.)

In Ground Two, Petitioner claims staff at FCI-Safford and BOP must consider adding additional prerelease time (up to 12 months), based on a five-factor review, pursuant to the Second Chance Act. (Doc. 3 at 5.) Petitioner claims his liberty interest is implicated due to staff's failures in conducting the required five-factor review required for transferring his to pre-release custody and timely transferring him to a residential re-entry center. (*Id*.)

**The Answer**

Respondent seeks dismissal of the Petition on several grounds. First, Respondent argues that Petitioner failed to exhaust administrative remedies, and such failure should not be excused. (Doc. 24 at 12.) Second, Respondent argues that Petitioner's claims are not ripe for review by the Court. (*Id*.) Third, Respondent asserts that the Court lacks jurisdiction under the Administrative Procedure Act (APA) to review or alter the Petitioner's FSA Individualized Needs Plan or the Bureau's substantive Second Chance Act ("SCA") decision regarding Petitioner's placement in a prerelease-custody program. (*Id*.) Finally, Respondent argues that the Petition should be dismissed because Petitioner's claims are substantively meritless. (*Id*.)

**Summary of Recommendation**

As more fully set forth below, this Court finds that Petitioner's claims are substantively meritless, that it lacks subject matter jurisdiction to review Petitioner's individualized claims, that, in this case, the Court lacks authority to compel the BOP to provide Petitioner with his requested relief., and Petitioner's failure to exhaust his administrative remedies should not be excused. Accordingly, this Court recommends that the district court dismiss the Petition.

# DISCUSSION

## I. The First Step Act

Enacted into law in December 2018, the FSA addresses the reentry of incarcerated individuals into society. *Thigpen v. Heisner*, 2024 WL 1705256, at *2 (D. Ariz. Mar. 4, 2024), report and recommendation adopted, 2024 WL 1702275 (D. Ariz. Apr. 19, 2024). The FSA allows an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities" to earn time credits toward early release. 18 U.S.C. § 3632(d)(4)(A). "A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). "A prisoner determined by [BOP] to be a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii)

FSA time credit can only be applied to create an earlier release date for an eligible prisoner if the prisoner, *inter alia*: "(A) has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment; [and] (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment . . ." 18 U.S.C. § 3624(g)(1)(A)(B); *see also* 28 C.F.R. § 523.44(b)(1)-(2). If a prisoner meets the eligibility criteria, the Bureau "may transfer [a prisoner who has been sentenced to serve a term of supervised release after imprisonment] to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of earned FSA time credit." 18 U.S.C. § 3624(g)(3); *see also* 28 C.F.R. § 523.44(d) (directing that "[t]he [Bureau] may apply [FSA time credit] toward early transfer to supervised release under 18 U.S.C. § 3624(g) . . ."). Any remaining FSA time credit earned—beyond 12 months in the case of a prisoner who has been sentenced to a term of supervised release—are to be applied toward time in pre-

release custody, which includes community confinement placement. *See* 18 U.S.C. § 3632(d)(4)(C); *see also* 28 C.F.R. § 523.44(b)(c) (directing that "[t]he Bureau may apply [FSA time credit] toward prerelease custody . . .").

## II. Failure to Exhaust Administrative Remedies Inexcusable

Respondent requests dismissal of the Petition because Petitioner did not exhaust his administrative remedies, and such failure should not be excused. (Doc 24 at 12-16) Petitioner admits that he did not exhaust his administrative remedies. (Doc. 1 at 7-13.) He contends that he did not exhaust his administrative remedies because exhaustion would be futile, and therefore such failure should be excused. (*Id.* at 8.) This Court agrees with Respondent and recommends the Petition be dismissed, in its entirety, for Petitioner's failure to exhaust administrative remedies.

As a prudential matter, courts require a habeas petitioner to exhaust available administrative remedies before filing a petition for relief under 28 U.S.C. § 2241. *See e.g., Reno v. Koray*, 515 U.S. 50, 54–55 (1995); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). The United States Court of Appeals for the Ninth Circuit has recognized that:

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat,* 701 F.2d at 845.

An inmate's failure to exhaust administrative remedies has been excused for futility where the Bureau has officially predetermined an issue or where resolution of a claim can be accomplished based solely on statutory interpretation. *See Wright v. United States*, , 2019 WL 2746630, at *7 (W.D. Wash. June 5, 2019) (holding that "to the extent the [Bureau] [h]as predetermined the issue, and made it clear that any request [the petitioner] makes to the [Bureau] for calculation of good time credits under the amended statute will

- 5 -

be denied, there is no available administrative remedy. Under these circumstances, it would be futile for [the petitioner] to attempt to exhaust his administrative remedies."); *Aguilar v. United States*, 2015 WL 5719166, at *3 (D. Minn. Sept. 29, 2015) (concluding that exhaustion of administrative remedies is futile where "[t]he facts of this case are undisputed, and the issue is one of statutory interpretation, which is unaffected by any technical matters uniquely within the B[ureau]'s area of expertise or by the facts of the case" and "[t]he institutional interests protected by the exhaustion requirement carry little or no weight"); *Martinez v. Gutierrez*, 2023 WL 6466490, at *3 (D. Ariz. July 14, 2023), report and recommendation adopted, 2023 WL 6464850 (D. Ariz. Oct. 4, 2023) (finding administrative exhaustion futile where the petitioner raised a facial challenge to the Bureau's implementation of the statutes and regulations governing application of an inmate's FSA time credit and it appeared "very likely that the outcome of any further appeals to the Regional Director or the Office of General Counsel would have been consistent with the adverse decisions."); *Johnston v. Colbert*, 2023 WL 9510557, at *3 (D. Ariz. Aug. 15, 2023), report and recommendation adopted, 2024 WL 418123 (D. Ariz. Feb. 5, 2024), aff'd, 2024 WL 4903725 (9th Cir. Nov. 27, 2024)  (excusing inmate's failure to exhaust in § 2241 action where the petitioner was seeking relief with respect to the application of FSA time credit where "the factual record is adequately developed, and nothing in the record suggests that further administrative review would aid judicial review.")

Based upon the allegations in the Petition and Response, there is no evidence to suggest that the Petitioner's complaint could not have been resolved at the administrative level. As explained in further detail below, Petitioner's claims stem from factual errors due to Petitioner not possessing pertinent documents related to his risk and needs evaluations and SCA determinations by BOP. (*See* Doc. 26 at 3.) Petitioner himself admits that he was advised by BOP staff at least twice that he would receive copies of the necessary documents through the administrative remedy process. (*See* Doc. 1 at 12; Doc. 1-1 at 8, 9.) However, Petitioner decided to forgo such administrative remedy process and file the immediate

habeas petition. (*See* Doc. 1 at 8.) Because of Petitioner's failure to exhaust his administrative remedies, many of the factual bases for his habeas petition are incorrect, and the Court is unable to provide relief in this matter.

### III.   BOP Properly Assessed and Applied Petitioner's FSA Time Credits

In Ground One, Petitioner asserts that the BOP staff at FCI-Safford failed to properly calculate his FSA ETCs. (Doc. 1 at 7; Doc. 3 at 4.) Petitioner argues that he is entitled to 95 FSA ETCs based on programming he completed both before and after arriving at FCI-Safford. (Doc. 1 at 7; Doc. 3 at 4.) Respondent asserts that BOP correctly calculated Petitioner's FSA ETCs and that Petitioner accumulated 50 FSA ETCs as of September 7, 2025. (Doc. 24 at 2.)

The FSA provides sentencing credit to prisoners for completed EBRRs and PAs according to their individualized risk and needs assessment. 18 U.S.C.A. § 3632(a), (b). "In 2019, the BOP, the National Institute of Justice, the Office of the Deputy Attorney General, and the Independent Review Committee formed pursuant to the FSA reviewed all existing BOP programs to determine which could serve as EBRRs or PAs within the meaning of the FSA." *Phares v. Bradley*, 2021 WL 3578674, at *5 (C.D. Cal. Apr. 22, 2021), report and recommendation adopted, 2021 WL 5868125 (C.D. Cal. Dec. 8, 2021). "These entities conducted a comprehensive review of the literature surrounding each program, and the Independent Review Committee provided a related separate report." *Id.* (punctuation modified). "Based on that review, in January 2020, the BOP published a list of the approved EBRRs and PAs, which it amended in December 2020, resulting in the Guide published on the BOP website." *Id.* The Bureau of Prisons subsequently "developed and released a risk needs assessment system titled 'Prisoner Assessment Tool Targeting Estimated Risk and Needs' (PATTERN)." *Bradford v. Peters*, 2025 WL 1827811, *3 (D. Ariz. Apr. 16, 2025), report and recommendation adopted, 2025 WL 1826730 (D. Ariz. Jul. 2, 2025). This system "determines the [EBRR] programming that is appropriate for each prisoner and assigns each prisoner to such programming." *Id.*

Petitioner's Individualized Needs Plan ("INP") notes that his individual needs

include "MEDICAL," "REC/LEISURE/FITNESS," and "TRAUMA." (Doc. 24-1, ¶ 21.) Petitioner makes no showing that any of the programming undertaken prior to his arrival at FCI-Safford qualifies as EBRRs or PAs pursuant to his individualized risk and needs assessment. While Petitioner concludes the contested classes and work programs in which he participated *should* count towards his FSA ETCs, Petitioner does not disclose specific classes or programs,[2] how long such classes were attended, nor otherwise discusses how those activities would meet the definitions of "MEDICAL," "REC/LEISURE/FITNESS," or "TRAUMA" as required by his Individualized Needs Plan.

Regardless, such individualized determination is in the sole purview of the BOP. *See, e.g., Phares* 2021 WL 3578674, at *5 ("Petitioner errs in assuming that any and all courses he has completed while incarcerated ... will count as EBRRs and PAs that will generate ETCs [earned time credits]."); *Butler v. Bradley*, 2021 WL 945252, at *4 (C.D. Cal. Feb. 22, 2021) ("If an inmate could accrue FSA credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system, 18 U.S.C. § 3632(a), (b), would be superfluous."), report and recommendation adopted, 2021 WL 5596151 (C.D. Cal. Nov. 30, 2021). Accordingly, Petitioner is not entitled to relief from the Court. *See Thigpen*, 2024 WL 1705256, at *3 (holding that a petitioner seeking judicial application of his FSA time credit is not entitled to judicial relief because "the challenged decision is committed to the discretion of the B[ureau].")

Further, "the district court does not have subject matter jurisdiction to review individualized, discretionary determinations made by the [Bureau]" unless "that [Bureau] action is contrary to established federal law, violates the United States Constitution, or exceeds the BOP's statutory authority. *Chatmon v. Fed. Bureau of Prisons*, 2021 WL 11421799, at *5 (D. Ariz. Apr. 7, 2021), report and recommendation adopted, 2021 WL

---

[2] Petitioner contends that he took classes related to WWI history and worked as an orderly and in the prison's library. (Doc. 1 at 4, Doc. 26 at 7-8.) Petitioner fails to explain how those programs would count toward his FSA ETCs pursuant to his INP. As pointed out by Respondent, the BOP, in its discretion would classify such activities as "WORK" or "EDUCATION," which would not qualify for FSA ETCs under Petitioner's INP. (Doc. 24 at 2.)

2533469 (D. Ariz. June 21, 2021) (citing *Close v. Thomas*, 653 F.3d 970, 973-74 (9th Cir. 2011); *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2010)). *See also Davenport v. Birkholz*, 2023 WL 9686338, at *4 n. 6 (D. Ariz. Dec. 27, 2023) (recognizing the district court's jurisdiction in § 2241 proceedings to decide whether Bureau's actions comported with established federal law, the United States Constitution, or were within its statutory authority and rejecting the respondent's argument that the Administrative Procedures Act and the district court's lack of authority to review Bureau discretionary decisions undermined the district court's § 2241 jurisdiction), report and recommendation adopted, 2024 WL 639987 (D. Ariz. Feb. 15, 2024); *Barnes v. Smith*, 2012 WL 2590494, at *3 (D. Ariz. July 3, 2012) (recognizing that "[j]udicial review remains available for allegations that B[ureau] action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority."). Therefore, to the extent Petitioner asks this Court to review whether specific programs would qualify as EBRR or PA pursuant to his INP, the Court does not have subject matter jurisdiction to entertain a challenge such discretionary function undertaken by the BOP according to Petitioner's individualized needs and risk assessment.[3]

Therefore, for the foregoing reasons, this Court additionally recommends that Ground One of the Petition be dismissed.

### IV. The Court Lacks Jurisdiction to Consider Petitioner's Ground Two

In Ground Two, Petitioner asserts that BOP never conducted a five-factor review for pre-release custody under the SCA, and had his FSA ETCs been calculated and applied upon his arrival at FCI-Safford, he would have been eligible to be transferred to pre-release custody at a residential reentry center in April 2025. (Doc. 3 at 5.) As discussed above, the Court will not recommend disturbing BOP's calculation of Petitioner's FSA ETCs.

The Second Chance Act of 2007 was signed into law on April 9, 2008. *See* 18 U.S.C.

---

[3] Because the Court does not have jurisdiction to review Petitioner's INP, nor whether specific programs would qualify for FSA ETCs therein, the Court also recommends dismissal of Petitioner's Motion for Subpoena (Doc. 20) for failure to show good cause. *See Stedke v. Shinn*, 2021 WL 2138795, at *1 ("Until this Court determines that review is available, Petitioner cannot show good cause for discovery."); *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997).

§§ 3621, 3624. The SCA sets forth standards by which the Bureau is required to make decisions concerning prisoner placement into residential re-entry Centers. Under the SCA, the Director of the Bureau is required to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term, not to exceed 12 months, under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." *Bruce v. Apker*, 2009 WL 2509170, at *1 (D. Ariz. Aug. 17, 2009) (quoting 18 U.S.C. § 3624(c)(1)).

Through the SCA, Congress delegated the "authority to designate the place of an inmate's imprisonment" to the BOP. 18 U.S.C. § 3621(b); *Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam), cert. denied, 566 U.S. 1030 (2012). When exercising this authority, the BOP must determine placement based upon a five-factor test:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

While inmates have a right to be considered for prerelease custodial programs, *see United States v. Saeteurn*, 504 F.3d 1175, 1180 (9th Cir. 2007) (noting "prisoners have a right to be considered for early release."), such consideration requires an individualized BOP determination based upon the five-factor test found in § 3621 but does not compel a particular decision. See *Johnston*, 2023 WL 9510557, at *7.

In the immediate case, BOP conducted a five-factor review of Petitioner's prerelease custody pursuant to the SCA and determined that he was to be allowed 270 days in pre-release custody. (Doc. 24-3 at 33.) Petitioner, however, argues that he "deserves" the statutory maximum of 12-months in prerelease custody under the SCA because he is a "homeless veteran." (Docs. 3 at 5; Doc. 26 at 5.) Petitioner provides no legal or statutory basis to such entitlement, nor how such factual assertion would otherwise affect the BOP's five-factor review under the SCA. Because the BOP's five-factor calculation of Petitioner's allowable prerelease custody time is a discretionary function of BOP under the SCA, this Court does not have subject matter jurisdiction to hear Petitioner's challenge. *See Mohsen v. Graber*, 583 F. App'x 841, 842 (9th Cir. 2014) (Mem. decision applying *Reeb* in the context of individualized determination concerning eligibility for residential reentry center under § 3621 and deciding the district court lacked subject matter jurisdiction over a claim challenging that substantive Bureau determination); *Bruce*, 2009 WL 2509170, *5 ("The SCA only requires that the BOP consider an inmate for RRC placement; it does not mandate that the inmate actually get such placement."); *Constanza v. FCI Victorville II*, 2025 WL 2405486, *1 (C.D. Cal. June 2, 2025) ("[A] petitioner may not properly challenge the BOP's decision regarding the petitioner's prerelease custody designation."), report and recommendation adopted, 2025 WL 2402246 (C.D. Cal. Aug. 18, 2025); *Powell v. Engleman*, 2025 WL 3464888, *1, (C.D. Cal. May 1, 2025) ("[T]he Ninth Circuit has stated clearly that federal courts lack jurisdiction under Section 2241 to review BOP's individual placement decisions for inmates."), report and recommendation adopted, 2025 WL 343675 (C.D. Cal. Dec. 2, 2025). Accordingly, this Court additionally recommends that Ground Two be dismissed for want of subject matter jurisdiction.

Further, Petitioner is not entitled to monetary damages for claims brought under § 2241. *See Nelson v. Campbell*, 541 U.S. 637, 646 (2004) ("damages are not an available habeas remedy"). Accordingly, having already been transferred to a residential reentry center on November 4, 2025, Petitioner has received the only relief for which he could be entitled pursuant to Ground Two. (*See* Docs. 29 & 31.) Therefore, this Court alternatively

recommends that Ground Two be dismissed as moot.

**RECOMMENDATION**

For the foregoing reasons, the undersigned Magistrate Judge **RECCOMENDS** that the district court, after its independent review, enter an order **ADOPTING** this Report and Recommendation and **DENYING** the Petition (Doc. 1), Petitioner's Motion for Summary Judgment (Doc. 12), and Petitioner's Motion for Issuance of Subpoena (Doc. 20).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply shall be filed unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). If objections are filed, the parties should use the following case number: **CV-25-294-TUC-JGZ**.

Dated this 20th day of January, 2026.

Honorable Jacqueline M. Rateau
United States Magistrate Judge